IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UTAH REVERSE EXCHANGE, LLC, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION  14-0408-WS-B ) |
| LINDA DONADO, et al., | ) ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the plaintiffs' motion for summary judgment as to the defendants' counterclaim.  (Doc. 61).  The parties have filed briefs and evidentiary materials in support of their positions, (Docs. 62-64, 71, 73), and the motion is ripe for resolution.  After careful consideration, the Court concludes the motion is due to be denied.

## BACKGROUND

The plaintiffs in this declaratory judgment action are five limited liability companies ("Utah," "Range," "Water," "Patmos," and "Florencia"), all formed by Charles Breland to facilitate his business of buying and reselling real estate.  The defendants are two individuals ("Linda" and "William") who performed services for Breland and certain of his LLCs in locating and acquiring various properties.  The complaint seeks a declaration that the plaintiffs owe nothing to the defendants arising out of their rendition of such services.  (Doc. 1 at 7).

According to the counterclaim, (Doc. 47), Breland agreed on behalf of the plaintiffs to pay the defendants all compensation he or any of his LLCs owed them.  The counterclaim alleges that the defendants are owed agreed compensation for their services with regard to two properties.  The counterclaim is asserted

against all five plaintiffs as well as a new party ("Osprey"), which is another LLC formed by Breland. (*Id*. at 7-8).

According to the counterclaim, in 2003 the defendants performed services in connection with the location and acquisition of certain property in Mexico. The property was resold in 2004 and 2005, and the defendants were paid 10% of the resale price per an oral agreement. As part of the sale transaction, Breland retained an option to re-purchase a portion of the property he had just sold. (Doc. 47 at 9).

According to the counterclaim, the defendants also performed services in connection with Breland's acquisition of property in Utah. In July 2005, Utah, Range and Water closed on this property. (Doc. 71 at 5). Prior to closing, (Doc. 71-5 at 87), the defendants agreed to Breland's proposal that they be compensated with a 25% ownership interest in the total mineral rights in the Utah property rather than with 10% of the resale price, the transfer of such rights to occur at some later date. (Doc. 47 at 10).

In 2009, Breland filed for bankruptcy protection. According to the counterclaim, in April 2010 Breland bound all his LLCs to satisfy all indebtedness to the defendants. In particular, he promised to use any or all of their assets to fully compensate the defendants, in exchange for their assistance in developing a comprehensive liquidation plan to terminate his bankruptcy proceedings and for refraining from filing a proof of claim in those proceedings. In December 2010, Breland reaffirmed his promise. In reliance on Breland's promise, the defendants provided the assistance he requested and refrained from filing a proof of claim. (Doc. 47 at 10-11).

In December 2010, (Doc. 71 at 8), within the bankruptcy proceedings and with the defendants' assistance, Breland sold his options to repurchase the Mexico property, for $19 million. The defendants seek payment of $1.9 million, or 10% of the resale price, as compensation. (Doc. 47 at 11-12).

In or about May 2011, (Doc. 71 at 8), within the bankruptcy proceedings, Utah, Range and Water sold the Utah property.  As part of the deal, the purchaser acquired all the mineral rights but transferred to Osprey a 33% interest in those rights.  (Doc. 47 at 12).   The defendants demand that Osprey transfer to them a 25% interest in the mineral rights to the Utah property.  (*Id*. at 12-13).  If Osprey no longer owns such rights, the defendants demand damages in the value of such rights, plus additional damages for fraudulently failing to make the transfer.  (*Id*. at 13-14).

On motion for summary judgment, the plaintiffs[1] argue that the defendants' claim as to both the Mexico and the Utah properties is barred by their failure to file a proof of claim in Breland's bankruptcy proceedings.  As to the Utah property, the plaintiffs further argue the defendants' claim is barred by the statute of frauds and the statute of limitations.[2]  As to the Mexico property, the plaintiffs argue they have no connection to that property and that the underlying deal to compensate the defendants is barred by Mexico's statute of frauds.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  The moving party may meet its

---

[1] Although Osprey is a movant but not a plaintiff, the Court uses this terminology for convenience.

[2] The plaintiffs expend considerable effort questioning the defendants' evidence regarding the existence of an oral agreement for a 25% mineral interest in the Utah property.  (Doc. 64 at 14-18).  They do not, however, argue that there is no genuine issue of material fact as to whether such an agreement existed, and their own presentation would in any event fail to establish the absence of such an issue.

burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[3]  Accordingly, the Court limits its review to the

---

[3] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144

exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited.[4]  Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

## I. Discharge in Bankruptcy.

Breland apparently received a discharge of his debts.  The plaintiffs argue that, because the defendants failed to file any proofs of claim in the bankruptcy proceedings despite actual knowledge of the proceedings and of the deadline for doing so, they are barred by Breland's discharge from pursuing any claim against not just Breland but the plaintiffs as well.  (Doc. 64 at 5-14).

The plaintiffs recognize that only a debtor (here, Breland) receives a discharge in bankruptcy, and they recognize that the defendants' claim is against the plaintiffs, not against Breland.  They nevertheless insist that the defendants' claim is barred because the defendants knew that Breland had listed the plaintiffs as assets of his estate and that this meant the trustee could exercise control over the plaintiffs, selling them and/or their assets to satisfy Breland's debts.  "Under such circumstances, … any claims against [the plaintiffs] were waived by the [defendants] and discharged when they failed to file proofs of claim in the Breland bankruptcy proceeding."  (Doc. 64 at 13).  But the plaintiffs offer no authority for

---

F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so.").  "[A]ppellate judges are not like pigs, hunting for truffles buried in briefs," and "[l]ikewise, district court judges are not required to ferret out delectable facts buried in a massive record …."  *Chavez v. Secretary, Florida Department of Corrections*, 647 F.3d 1057, 1061 (11th Cir. 2011) (internal quotes omitted).

[4] The defendant have submitted the largely irrelevant and uncited entirety of several lengthy depositions, even though they are forbidden to do so both by local rule, Civil L.R. 5.5(a), and direct order.  (Doc. 37 at 5).

the dubious proposition that a creditor with a claim against a non-bankrupt entity that is owned by a bankrupt individual must pursue its claim against the non-bankrupt entity in the owner's personal bankruptcy proceedings or lose its claim against the non-bankrupt entity. Even after the defendants pointed this out, (Doc. 71 at 10-13), the plaintiffs in their reply brief simply repeated their conclusion without attempting to show by law or legal analysis that claims against an entity asset of a debtor are discharged by the debtor's discharge. (Doc. 73 at 1-5).

As noted, the Court will not create or support an argument the parties have elected not to advance or support on their own. It takes more than a bald ipse dixit to establish a legal proposition, especially one as unlikely as that advanced by the plaintiffs. Their failure to offer anything remotely supporting their position requires its rejection.

## II. Statute of Frauds.

The parties agree that the alleged 2005 agreement to compensate the defendants with a 25% mineral interest in the Utah property is subject to Utah's statute of frauds. (Doc. 64 at 19; Doc. 71 at 14). While the plaintiffs rely on four different prongs of the statute of frauds, only one of them definitely applies.[5]

"Every contract … for the sale, of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, is in writing subscribed by the party to whom the … sale is to be made, or by his lawful agent thereunto authorized in writing." Utah Code § 25-5-3. The defendants

---

[5] Section 25-5-1 of the Utah Code appears to address only actual conveyances of realty, not contracts to transfer realty in the future. Section 25-5-4(a) applies only when the contract "by its terms" is not to be performed within a year, and there has been no showing that the oral agreement to transfer a 25% mineral interest prevented a transfer from occurring within one year. Section 25-5-4(e) applies to contracts "authorizing or employing an agent or broker to purchase or sell real estate for compensation." The purpose of the agreement in this case was not to authorize or employ the defendants to buy the Utah property on behalf of Breland or his LLCs (something that apparently had already occurred) but to alter the defendants' compensation for their services in connection with the acquisition.

acknowledge that this provision of the statute of frauds applies, but they argue
they are exempt from it under a "partial performance exception."  (Doc. 71 at 16).

> It is clear, however, that a verbal agreement to transfer an interest
> in land can be taken out of the statute of frauds, and that one can
> be estopped from challenging the oral agreement if three requirements
> are met:  A court must find (1) that there was such an agreement, (2)
> that there had been part or full performance, and (3) that there was
> reliance thereon.

*Orton v. Carter*, 970 P.2d 1254, 1259 (Utah 1998).  The defendants say they have
evidence of all three elements.  (Doc. 71 at 17-18).

As for the second element, the defendants point to evidence that, after
closing, they "participated in managing the tract, including supervising drilling
activities on the tract."  (Doc. 71 at 17).  The plaintiffs point out that the
deposition excerpts on which the defendants rely to establish the existence of the
oral agreement, (*id*. at 5 & n.15; *id*. at 17 & n.46), indicate that it was merely an
agreement to substitute a 25% mineral interest for the 10% resale price as the
defendants' compensation for their services in acquiring the Utah property.  (Doc.
73 at 6-9).  Williams testified that "the understanding was" that "it was supposed
to be a 10 percent fee," but "it morphed into, well, rather than me pay you the
cash, you know, why don't you take a percentage of the thing."  (Doc. 71-5 at 87).
Linda testified that, as "compensation with respect to any efforts expended to
assist Mr. Breland or his companies in acquiring the Utah Sunnyside property,"
"instead of the [10% resale] commission we said we would take 25 percent of the
deal that he made on the property."  (Doc. 71-4 at 47).

If, as these statements seem to suggest, Breland agreed to pay the
defendants a 25% mineral interest as compensation simply for their services in
acquiring the Utah property, it is difficult to see how the defendants' post-
acquisition conduct in connection with oil and gas exploration could constitute
performance under the oral contract for purposes of the *Orton* exception.  But even
if the quoted testimony renders the defendants unlikely to establish the elements

identified in *Orton*, the plaintiffs have not shown that the defendants cannot do so. First, they have not shown that the quoted testimony is irreconcilable with the existence of a provision in the oral contract that the defendants perform services in connection with oil and gas exploration as a condition to receiving the 25% mineral interest. Second, they have not acknowledged William's testimony, cited by the defendants, that he "earned every dime of that 25 percent" by his post-closing mineral development work. (Doc. 71-5 at 116; Doc. 71 at 5 n.16; *id.* at 17 n.48). And third, they have not addressed the possibility that the defendants performed additional relevant acquisition services after the oral agreement was reached but before or at closing.

## III.  Statute of Limitations.

The alleged oral agreement to transfer to the defendants a 25% mineral interest in the Utah property was reached in mid-2005; the defendants' counterclaim was first filed in February 2015. (Doc. 35). The plaintiffs argue the defendants' claim is barred by either Utah's four-year statute of limitations applicable to oral contracts or Alabama's six-year limitations period. (Doc. 64 at 21-23). The defendants oppose this limitations defense on a number of grounds, (Doc. 71 at 18-22), but the Court addresses only the third and fifth of these, as they are adequate to resolve the present motion.

As a threshold matter, the plaintiffs have failed to show that, under applicable choice-of-law rules, Utah's limitations period governs. They argue that the law of the place where the contract was formed provides the governing law for limitations purposes, and they submit Linda's testimony that the oral agreement for a 25% mineral interest was formed in Daphne, Alabama. (Doc. 64 at 19, 22).

By their own argument, therefore, they cannot insist on applying Utah's limitations period.[6]

"The statute of limitations begins to run when a cause of action on the contract accrues, which is to say, when the contract is breached." *Seybold v. Magnolia Land Co.*, 376 So. 2d 1083, 1084 (Ala. 1979); *accord AC, Inc. v. Baker*, 622 So. 2d 331, 333 (Ala. 1993). "Where the defendant has agreed under the contract to do a particular thing, there is a breach and the right of action is complete upon his failure to do the particular thing he agreed to do." *Seybold*, 376 So. 2d at 1084. But the "particular thing" a promisor agrees to do includes the time at or by which he agrees to do it. Thus, "[t]he breach occurred … when the time for performance arrived and [the defendant] failed to perform." *Cunningham v. Langston, Frazer, Sweet & Freese, P.A.*, 727 So. 2d 800, 805 (Ala. 1999). At least in general (e.g., absent an anticipatory repudiation), a failure to perform before performance is due is not a breach.

The defendants correctly object that the plaintiffs have presented no evidence as to when performance (transfer of the mineral interest) was due under the terms of the oral agreement. (Doc. 71 at 20). The plaintiffs appear to assume that performance was due immediately upon acquisition of the Utah property, (Doc. 64 at 22), but they offer no evidence that the agreement contained such a term.

"Where a contract provides no fixed time for performance, the claimant must generally make a demand for performance in order to put the other party in default; and, if a demand for performance is required, the demand should be made within a reasonable time after it lawfully can be made." *Seybold*, 376 So. 2d at 1086; *accord id.* at 1087. The defendants accurately point out that the plaintiffs have presented no evidence of a demand by the defendants so as to put Breland or

---

[6] The Court therefore need not reach the defendants' argument that, under Alabama conflict rules, the forum state (Alabama) ordinarily supplies the limitations period. (Doc. 71 at 19).

the plaintiffs in breach and no evidence or argument that a reasonable time for making such a demand expired more than six years before the counterclaim was pleaded. (Doc. 71 at 21-22). The defendants also identify circumstances which, they say, rendered it reasonable for them not to demand transfer of the mineral interest. (*Id*. at 22).

The plaintiffs' sole response to the defendants' presentation is to complain that requiring them to show when the alleged oral agreement was breached "would place an impossible burden on" them. (Doc. 73 at 11). But this is the plaintiffs' motion for summary judgment, so they have the initial burden either to negate the timeliness of the defendants' counterclaim or to direct the Court's attention to materials on file that demonstrate the defendants cannot show timeliness.[7] However difficult that burden may seem to the plaintiffs, it is theirs to bear, and they cannot meet it by ignoring the defendants' arguments.[8]

## IV. Strangers to Mexico Transaction.

William testified that the agreement to pay the defendants 10% of the resale price of the repurchase option on the Mexico property was made with another entity controlled by Breland ("Pelican"). (Doc. 71-5 at 131). The plaintiffs argue that, since they themselves "had nothing to do with" the Mexico property or the transactions concerning it, "no such claim" for the 10% commission can be made against them. (Doc. 64 at 25, 28). But the defendants' claim is that Breland, on behalf of the plaintiffs, obligated the plaintiffs to pay all compensation due the defendants, including that arising from the sale of the repurchase option. The

---

[7] The Court need not at this juncture determine which party bears the burden of proof at trial as to the statute of limitations.

[8] It appears likely the plaintiffs failed to conduct discovery into many of the matters relevant to the statute of limitations, such as asking the defendants if they and Breland had agreed on when performance was due, or whether and when they made demand for performance, or if there were any circumstances that caused them not to make such a demand. Without such necessary discovery, it is unsurprising that the plaintiffs find it "impossible" to prevail on the limitations issue.

10

plaintiffs have made no argument, and have offered no authority supporting an argument, that only someone already involved in a transaction can enforceably agree to ensure payment, and the law of guaranty would suggest there is no such rule.

## V.  Mexican Law.

The plaintiffs assert that the agreement between the defendants and Pelican is unenforceable under Mexican law because it was not reduced to writing.  (Doc. 64 at 29-30).  For this proposition they rely on a citation to an obscure treatise or handbook and a sentence fragment from a 1993 law review article.  The defendants deny that Mexican law applies to the agreement but continue that, in any event, the plaintiffs have offered inadequate proof of what Mexican law requires in the circumstances presented here.  (Doc. 71 at 24-25).

Assuming without deciding that Mexican law applies, the Court agrees that the plaintiffs' effort to prove the substance of that law is not up to the task.  The plaintiffs offer no Mexican cases or statutes, and they do not even favor the Court with a copy of the secondary materials on which they rely.  Even if the list quoted by the plaintiffs is in fact, as they represent, a list of contracts that must be put in writing, they have not shown that the agreement at issue falls within any of the listed categories within the contemplation of Mexican law.  Nor have they shown that the penalty for not reducing such an agreement to writing is unenforceability.[9] Finally, they have not shown that, whatever Mexican law provided in 1993, it was not meaningfully different in 2005.

## CONCLUSION

It is somewhat disconcerting to have a case putting over $3 million at stake come before the Court at this late stage with the parties apparently still unfamiliar

---

[9] Instead, they merely cite the treatise or handbook for this proposition, with no supporting quotation from it.

with the factual and legal issues that will govern its resolution.[10]  From the Court's perspective, neither side has displayed grounds for feeling confident in its position.  The immediate task before the Court, however, is only to resolve the pending motion.  For the reasons set forth above, the plaintiffs' motion for summary judgment is **denied**.

DONE and ORDERED this 2nd day of December, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[10] This opinion touches on only a few of the many apparent shortcomings in the parties' apprehension of, and preparedness to address, those factual and legal issues.